1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROGELIO TETO FIERRO, | Case No.:  3:22-cv-01705-H-BSG |
| Plaintiff, | **ORDER:** |
| v. | **(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | [Doc. No. 15.] |
| | **(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| | [Doc. No. 20.] |

    On November 2, 2022, Plaintiff Rogelio Fierro ("Plaintiff") filed a complaint against Defendant Kilolo Kijakazi, the Acting Commissioner of Social Security ("the Acting Commissioner" or "Defendant"), seeking judicial review of an administrative denial of disability benefits under the Social Security Act ("SSA").  (Doc. No. 1.)  On February 14,

2023, the Acting Commissioner answered Plaintiff's complaint and lodged the administrative record. (Doc. No. 13.)  On March 16, 2023, Plaintiff filed a motion for summary judgment, asking the Court to reverse the Acting Commissioner's final decision and direct the Social Security Administration (the "Administration") to award benefits. (Doc. No. 15.)  On May 22, 2023, the Acting Commissioner cross-moved for summary judgment, asking the Court to affirm the Acting Commissioner's final decision. (Doc. No. 20.) On June 5, 2023, Plaintiff filed a reply in support of his motion for summary judgment. (Doc. No. 22.)  For the reasons below, the Court denies Plaintiff's motion for summary judgment, grants the Acting Commissioner's cross-motion for summary judgment, and affirms the Acting Commissioner's final decision.

## BACKGROUND

On September 27, 2018, Plaintiff applied for disability insurance benefits and supplemental security income, claiming a disability onset date of October 10, 2017. (Doc. No. 13-2 at 18.)  The Social Security Administration initially denied Plaintiff's application on April 18, 2019 and denied reconsideration on August 23, 2019. (Id.)  On October 9, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Id.)  The ALJ held a telephonic[1] hearing on Plaintiff's application on November 9, 2021.[2]  (Id.) Plaintiff testified at the hearing and was represented by counsel. (Id.; Doc. No. 13-2 at 89–111; Doc. No. 13-4 at 149–152.)  The ALJ also heard testimony from Dr. Sonia Lynne Peterson, an independent vocational expert.  (Doc. No. 13-2 at 18; Doc. No. 13-2 at 111–118.)

On March 22, 2022, the ALJ issued a written decision analyzing Plaintiff's claim and determined that Plaintiff was not disabled as defined under the SSA.  (Doc. No. 13-2

---

[1]    All parties agreed to a telephonic hearing due to the extraordinary circumstances presented by the COVID-19 pandemic.  (Doc. No. 13-2 at 18.)
[2]    The ALJ held two prior hearings for this matter. A hearing on September 25, 2020 was postponed for record development and a hearing on February 23, 2021 did not occur because the Plaintiff failed to appear. (Doc. No. 13-2 at 18.)

at 18–38.)   SSA regulations require ALJs to use the following five-step inquiry when determining whether an applicant qualifies for disability benefits: (1) has the claimant been gainfully employed since the time of the disability onset date; (2) "is the claimant's impairment severe"; (3) "does the impairment 'meet or equal' one of a list of specific impairments described in the regulations," and if not, what is the claimant's residual functional capacity ("RFC")[3]; (4) is the claimant capable of performing past relevant work; and (5) "is the claimant able to do any other work." Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); see 20 C.F.R. § 404.1520(a)(4)(i)–(v).

If it is found that the applicant is disabled under the five-step process and there is medical evidence of a substance use disorder, including drug addiction or alcoholism ("DAA"), then the ALJ must perform an additional step to determine whether the substance use disorder is a contributing factor material to the determination of disability. See 20 C.F.R. §§ 404.1535, 416.935.   The Social Security Act provides that a claimant "shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the . . . determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).   In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol.  See 20 C.F.R. §§ 404.1535(b), 416.935(b); Parra v. Astrue, 481 F.3d 742, 746–47 (9th Cir. 2007); Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998).

Here, the ALJ determined at step one that the Plaintiff had not engaged in substantial gainful activity since the disability onset date of October 10, 2017.  (Doc. No. 13-2 at 21.) At step two, the ALJ found that Plaintiff had the following severe impairments: incipient degenerative disc disease of the lumbar spine at L3-4 with mild facet changes; status post left knee surgery with loss of cartilage and degenerative changes in medial compartment of left knee; depression; anxiety; and polysubstance abuse (including heroin,

---

[3]     SSA regulations define residual functional capacity as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

methamphetamine, and alcohol).  (Id.)  At step three, the ALJ concluded that even with Plaintiff's substance use he did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in SSA regulations.  (Id. at 22.)  The ALJ then determined that Plaintiff had a residual functional capacity ("RFC") to perform "light work," as defined in 20 § C.F.R. 404.1567(b),

> "except he is further limited to occasionally climb ramps or stairs but never ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, or crawl.  He can occasionally push or pull with the lower extremities.  He must avoid concentrated exposure to extreme cold and hazards like unprotected heights or dangerous moving machinery.  Mentally, the claimant is limited to work involving simple routine tasks, no more than occasional interactions with supervisors or coworkers, and no interaction with the public while working.  He also requires a stable work environment and routine.  The claimant would miss at least two workdays per month due to effects of substance abuse."

(Id. at 26.)  At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work.  (Id. at 33.)  At step five, the ALJ found, considering the Plaintiff's age[4], education, work experience, and RFC, there were no jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  (Id. at 34.) Consequently, the ALJ determined that Plaintiff was disabled.  (Id.)

Because there was medical evidence of Plaintiff's substance use, the ALJ proceeded to an additional step to determine whether Plaintiff's drug addiction or alcoholism is a contributing factor material to the determination of disability.  (Id. at 34–38.)  To do so, the "ALJ conducts the five-step inquiry a second time, separating out the impact of the DAA, to determine whether DAA is a contributing factor material to the disability determination."  Stephanie M. v. Saul, No. 20-cv-01711-MMA-BS, 2022 WL 1037112, at *5 (S.D. Cal. Apr. 6, 2022) (citing Parra, 481 F.3d at 747).

Here, following the ALJ's finding that Plaintiff had not engaged in substantial

---

[4]    At the time Plaintiff applied for benefits he was approximately 47 years old.  (Doc. No. 13-2 at 34.)

gainful activity at step one, the ALJ determined at step two that if the Plaintiff stopped his substance use, he would still have a severe impairment or combination of impairments. (Doc. No. 13-2 at 34.)  At step three, the ALJ determined that even if Plaintiff stopped his substance use, he would not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in SSA regulations.  (<u>Id.</u> at 35.) Next, the ALJ determined that without Plaintiff's substance use he would have the same RFC quoted above, except that he would no longer miss two days of work a month due to substance use.  (<u>Id.</u> at 36.)  At step four, the ALJ found that Plaintiff would still be unable to perform past relevant work without his substance use.  (<u>Id.</u> at 37.)  At step five, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform if he stopped his substance use.  (<u>Id.</u> at 37–38.)  In conclusion, the ALJ held that Plaintiff's substance use is a contributing factor material to the determination of disability because he would not be disabled if he stopped his substance use.  (<u>Id.</u> at 38.)

Consequently, the ALJ determined that Plaintiff was not disabled from October 10, 2017, the alleged onset date, through March 22, 2022, the date of the ALJ's decision.  (<u>Id.</u>) On September 6, 2022, the Social Security Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision final.  (Doc. No. 15 at 4.)

## LEGAL STANDARDS

### A.    The Social Security Administration's Sequential Five-Step Inquiry

The Social Security Administration employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits under the SSA.  20 C.F.R. § 404.1520(a)(4)(i)–(v).  To qualify for disability benefits, a claimant must establish that he or she is "disabled," meaning that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th Cir. 1995).

Step one in the sequential evaluation considers a claimant's "work activity, if any."

20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  An ALJ will deny a claimant disability benefits if the claimant is engaged in "substantial gainful activity."  Id. §§ 404.1520(b), 416.920(b).

If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to step two to ascertain whether the claimant has a medically severe impairment or combination of impairments.  Id. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The so-called "severity regulation" dictates the ALJ's step-two analysis.  Bowen v. Yuckert, 482 U.S. 137, 140–41 (1987).  Specifically, an ALJ will deny a claimant's disability claim if the ALJ does not find that a claimant suffers from a severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do "basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).

If the impairment is severe, however, the evaluation proceeds to step three.  At step three, the ALJ determines whether the impairment is equivalent to one of several enumerated impairments that the SSA deems so severe as to preclude substantial gainful activity.  Id. §§ 404.1520(d), 416.920(d).  An ALJ conclusively presumes a claimant is disabled if the impairment meets or equals one of the enumerated impairments.  Id.

If the ALJ concludes that a claimant does not suffer from one of the enumerated SSA regulations' severe impairments, the ALJ must determine the claimant's RFC before proceeding to step four of the inquiry.  Id. §§ 404.1520(e), 416.920(e).  An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.  See id. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC analysis considers whether the claimant's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting."  Id.  In establishing a claimant's RFC, the ALJ must assess relevant medical and other evidence, as well as consider all the claimant's impairments, including impairments categorized as non-severe.  Id. §§ 404.1545(a)(3)– (4), (e), 416.945(a)(3)–(4), (e).

Given the claimant's RFC, the ALJ determines at step four whether the claimant

has the RFC to perform the requirements of his or her past relevant work. <u>Id.</u> §§ 404.1520(f), 416.920(f).  If a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled.  <u>Id.</u>  Conversely, if the claimant does not have the RFC to perform his or her past relevant work, or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the Administration's inquiry, the ALJ must determine whether the claimant is able to do any other work in light of his or her RFC, age, education, and work experience.  <u>Id.</u> §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1).  If the claimant can do other work, the claimant is not disabled.  <u>Id.</u> §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  However, if the claimant is not able to do other work and meets the duration requirement of twelve months, the claimant is disabled.  <u>Id.</u>  Although the claimant generally continues to have the burden of proving disability at step five, a limited burden shifts to the Administration, such that the Administration must present evidence demonstrating that other jobs the claimant can perform—allowing for RFC, age, education, and work experience—exist in significant numbers in the national economy. <u>Tackett</u>, 190 F.3d at 1099.

## B.   <u>Drug Addiction and Alcoholism ("DAA")</u>

The SSA provides that "[a]n individual shall not be considered disabled . . . if alcoholism or drug addiction would  .  .  .  be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d) (2)(C). An ALJ must conduct a DAA analysis in applicable cases to determine whether a claimant's disabling limitations remain in the absence of drug and alcohol use.  20 C.F.R. §§ 404.1535, 416.935.  To make that determination, the Ninth Circuit provides a two-step process for how to analyze the claims of individuals who are found to have an alcohol or substance use problem.  <u>Bustamante v. Massanari</u>, 262 F.3d 949, 955 (9th Cir. 2001).

At step one, the ALJ performs the five-step inquiry to evaluate a claimant's disability "without separating out the impact of alcoholism or drug addiction."

3:22-cv-01705-H-BSG

_Bustamante_, 262 F.3d at 955–56. If the ALJ determines that the claimant is disabled[5] and there is medical evidence showing DAA, the "ALJ conducts the five-step inquiry a second time, separating out the impact of the DAA, to determine whether DAA is a contributing factor material to the disability determination." _Stephanie M._, 2022 WL 1037112, at *5 (citing _Parra_, 481 F.3d at 747). In determining whether a claimant's DAA is material, the test is whether an individual would still be found disabled if he or she stopped using drugs or alcohol. _See_ 20 C.F.R. §§ 404.1535(b), 416.935(b); _Parra_, 481 F.3d at 746–47; _Sousa_, 143 F.3d at 1245). This involves "evaluat[ing] which of [the claimant's] current physical and mental limitations . . . would remain if [the claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's] remaining limitations would be disabling." _See_ 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). The claimant bears the burden of proving that his substance use is not a material contributing factor to his disability. _Parra_, 481 F.3d at 745.

### C.   **Standard of Review**

Unsuccessful applicants for social security disability benefits may seek judicial review of a Commissioner's final decision in a federal district court. _See_ 42 U.S.C. § 405(g). This Court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. _See id._ "[F]ederal court review of social security determinations is limited." _Treichler v. Comm'r of Soc. Sec. Admin._, 775 F.3d 1090, 1098 (9th Cir. 2014). District courts will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" _Id._ (quoting _Andrews v. Shalala_, 53 F.3d 1035, 1039 (9th Cir. 1995)). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." _Bray v. Comm'r of Soc. Sec. Admin._, 554 F.3d 1219, 1222 (9th

---

[5]   A finding of a disability is a condition precedent to applying the second step of the DAA Analysis under 42 U.S.C. § 423(d)(2)(C). _Bustamante_, 262 F.3d at 955.

Cir. 2009) (quoting <u>Andrews</u>, 53 F.3d at 1039).  The Court considers the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's determination.  <u>Garrison v. Colvin</u>, 759 F.3d 995, 1009 (9th Cir. 2014).  "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's."[6] <u>Bray</u>, 554 F.3d at 1222 (quoting <u>Massachi v. Astrue</u>, 486 F.3d 1149, 1152 (9th Cir. 2007)).

Even if the ALJ commits legal error, a reviewing court will uphold the decision where that error is harmless.  Harmless errors are "inconsequential to the ultimate nondisability determination."  <u>Molina v. Astrue</u>, 674 F.3d 1104, 1115 (9th Cir. 2012) (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  <u>Id.</u> at 1111 (quoting <u>Shinseki v. Sanders</u>, 556 U.S. 396, 409 (2009)).

## **DISCUSSION**

Plaintiff argues that the ALJ failed to (1) provide sufficient reasons for discounting Plaintiff's allegations of disabling symptoms; (2) properly weigh the medical evidence in formulating Plaintiff's RFC; and (3) properly perform the DAA analysis.  (Doc. No. 15 at 5–22.)  Defendant argues that the ALJ provided legally sufficient reasons for finding Plaintiff's allegations inconsistent with the evidence in the record, properly weighed the medical evidence, and properly performed the DAA analysis.  (Doc. No. 20 at 8–20.)  For the following reasons, the Court denies Plaintiff's summary judgment motion and grants the Acting Commissioner's cross-motion.

### A.   **Plaintiff's Subjective Symptom Testimony**

At the hearing, Plaintiff testified about a variety of medical problems, pain, functional limitations, and other subjective symptoms, along with his inability to work. (<u>See</u> Doc. No. 13-2 at 93–111.)  Specifically, Plaintiff alleged an inability to work due to

---

[6]   That is the case because the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Garrison</u>, 759 F.3d at 1010 (quoting <u>Shalala</u>, 53 F.3d at 1039).

sciatic on the left side, bulging herniated disc, depression, anxiety, and insomnia. (<u>Id.</u> at 26.) He also alleged left knee pain and low back pain. (<u>Id.</u>) Plaintiff challenges the ALJ's finding that his statements concerning the intensity, persistence, and limiting effects of his symptoms are inconsistent with the evidence in the record. (Doc. No. 15 at 5–16.) Plaintiff asserts that the ALJ failed to provide specific, clear and convincing reasons for discounting Plaintiff's statements of disabling symptoms. (<u>Id.</u>) Defendant maintains that the ALJ properly considered the evidence in the record and provided legally sufficient reasons for finding that Plaintiff's symptom testimony was only partially consistent with the medical evidence. (Doc. No. 20 at 9–16.)

The Ninth Circuit has a two-step test for determining how to credit a claimant's symptom testimony. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the "ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." <u>Id.</u> Second, if the claimant satisfies step one, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." <u>Id.</u> If the ALJ finds the claimant's allegations of severity are not credible, "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's] testimony." <u>Werlein v. Berryhill</u>, 725 Fed. App'x. 534, 535 (9th Cir. 2018) (citations omitted).

When assessing the claimant's credibility, the ALJ may consider a range of factors including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." <u>Ghamin</u>, 763 F.3d at 1163 (<u>citing</u> <u>Smolen</u>, 80 F.3d at

1284); see also 20 C.F.R. § 404.1529(c).  District courts cannot second-guess the ALJ's decision if the ALJ supports the decision with substantial evidence.  See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162–63 (9th Cir. 2008) (explaining that the reviewing court need not disturb the ALJ's credibility assessment, even where some reasons the ALJ provided for discrediting a claimant's testimony were improper, so long as the assessment is supported by substantial evidence).

Here, at step one of the credibility determination, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Doc. No. 13-2 at 27.)  There was no evidence of malingering.  (See id.)  At step two, the ALJ found that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms . . . are partially inconsistent because of the lack of medical evidence to support the allegations." (Id.)  Accordingly, the Court must determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective symptom testimony.  For the reasons discussed below, the ALJ identified several legally sufficient reasons in his decision for discounting Plaintiff's subjective claims.

### 1. Objective Medical Evidence

The ALJ cited to ample medical evidence in the record inconsistent with the intensity of Plaintiff's reported physical symptoms.  The Ninth Circuit recently confirmed that an ALJ may not "reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Smartt v. Kijakazi, 53 F.4th 489, 494 (9th Cir. 2022) (quoting Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)).  However, "[w]hen objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. Smartt, 53 F.4th at 498 (emphasis in original) (collecting cases).  "An ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to the Social Security Act." Id. at 499 (internal citations omitted).

Here, the ALJ found that the medical evidence did not entirely support Plaintiff's

statements about the intensity, persistence, and limiting effects of his alleged symptoms. (Doc. No. 13-2 at 27.)  Plaintiff argues that the ALJ selectively highlighted several normal findings and offered a one-sided discussion of Plaintiff's physical impairments and mental health limitations.  (Doc. No. 15 at 13; Doc. No. 22 at 2.)  Defendant argues that the clinical signs present throughout the record did not support Plaintiff's allegations of extreme physical and mental limitations.  (Doc. No. 20 at 10–11.)  The Court agrees with the Defendant.

Regarding Plaintiff's physical impairments, the ALJ opined that Plaintiff's "musculoskeletal pain complaints cause some limitations but there are no significant neurological deficits or need for assistive devises."  (Doc. No. 13-2 at 33.)  The ALJ concluded that Plaintiff's musculoskeletal symptoms warranted limiting him to light exertion with additional postural and environmental limitations.  (Id.)  The ALJ reflected these limitations in the RFC determination.  (Id.)  The ALJ noted that Plaintiff "testified to ongoing knee pain due to arthritis with difficulty prolonged sitting, standing, and walking."  However, after a thorough review of the medical record from 2017 to 2021, the ALJ opined that "physical examinations showed no neurological deficits, a normal gait, and no required assistive devices to ambulate."  (Id. at 27, 31.)  The ALJ did note that imaging "does confirm the existence of moderately severe degenerative disc disease [sic] examinations reported he had a normal gait, 5/5 muscle strength throughout, and no neurological deficits."  (Id. at 31.)  In particular, the ALJ found no medical evidence of frequent emergency room visits due to debilitating pain, inpatient hospitalizations, or the need for spine surgery.  At the hearing, Plaintiff testified that he did not take any pain medications. (Id.)

The ALJ did not cherry-pick normal findings from the medical record as Plaintiff asserts.  Rather, the ALJ fairly reviewed the medical record.  The objective medical evidence supports the ALJ's conclusions regarding Plaintiff's physical impairments. Plaintiff was first seen for lower back pain in July 2018 with a positive straight leg test on the left side, but presented with no spinal tenderness, normal strength and sensation, and

ambulation with a steady gait.  (Doc. No. 13-7 at 8.)  During an inpatient hospital stay for detoxification from methamphetamines and alcohol in July 2018, Plaintiff complained about unsteady gait and station, but the medical provider noted these were normal on examination.  (Id. at 22.)  An orthopedic consultation by Dr. Thomas J. Sabourin, M.D. from April 2019 noted "significant left knee problems" and "moderate low back problems," but the other issues were "relatively minimal."  (Id. at 132.)  Even with some significant physical limitations, Dr. Sabourin concluded that Plaintiff could still lift or carry twenty pounds occasionally and ten pounds frequently, stand and walk up to six hours of an eight-hour workday, and sit for six hours of an eight-hour workday.  (Id.)  Throughout 2020, Plaintiff continued to report significant pain in his back and left knee to his providers, but the medical records during this time consistently note Plaintiff generally appeared ambulatory with good coordination, presented without the need for assistive devices, and showed no neurological defects.  (Id. at 423 ("[Plaintiff] displays no pain behaviors."); Doc. No. 13-8 at 87 ("[Plaintiff] is able to raise from a seated position without difficulty. Gait is not antalgic and [Plaintiff] ambulates without assistance."); Id. at 9 ("[Plaintiff] moves all extremities well, no obvious neurologic abnormality.").)  In 2021, Plaintiff's physical examinations showed he exhibited good range of motion of bilateral upper and lower extremities, no significant deformities, and his gait was slow, but with good coordination.  (Id. at 8.)

In reviewing the medical record, the ALJ did not ignore Plaintiff's positive clinical signs.  The ALJ noted Plaintiff's occasionally presented with a "slow" gait, mild effusion, internal derangement, and limited range of motion.  (Doc. No. 13-2 at 28–29.)  Neither did the ALJ ignore numerous imaging records, which showed moderate-to-severe disc degeneration along the cervical spine.  (Id. at 29.)  However, the ALJ properly accounted for these positive clinical signs by limiting Plaintiff to light exertional work with significant postural and environmental limitations.  (Id. at 33.) See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any medical conditions produce pain not severe enough to preclude gainful employment.")  Accordingly, there is substantial evidence supporting the ALJ's

conclusion that the objective medical record is inconsistent with the degree of musculoskeletal pain and limitations claimed by Plaintiff. [7]

Regarding Plaintiff's mental health impairments, the ALJ concluded that Plaintiff had "no more than moderate mental limitations due to his various depression and anxiety related symptoms." (Id. at 33.)  In reviewing Plaintiff's mental health treatment record, the ALJ noted the record "was rather unremarkable except for some clinical findings of depressed mood and affect but was otherwise within normal limits." (Id.)  The objective medical evidence supports the ALJ's conclusion regarding Plaintiff's mental functioning. As noted in the ALJ's decision, Plaintiff's condition was generally stable with no emergency room visits, psychiatric hospitalizations, suicide attempts or similar episodes of decompensation. (Id.)  During periods of sobriety, Plaintiff generally presented with a normal mood and affect, appeared groomed, cooperative, friendly, alert, and oriented with normal speech, good eye contact, linear and coherent thought processes, good focus, and attention, and lacked hallucinations, suicidal intentions, or paranoia. (Doc. No. 13-7 at 119–125, 380, 383, 388; Doc. No. 13-8 at 6, 8, 76.)  Thus, the ALJ reasonably concluded that these generally unremarkable clinical findings regarding Plaintiff's mental health were inconsistent with the extreme mental limitations alleged by Plaintiff. Jamtaas v. Berryhill, 706 F. App'x 401, 402 (9th Cir. 2017) ("[M]edical records showing that [plaintiff] was cooperative and oriented, had normal mood and affect, and had adequate performance on cognitive tests were inconsistent with the degree of mental health limitations alleged by

---

[7]     Plaintiff misreads Meanel v. Apfel, 172 F.3d 1111 (9th Cir. 1999), as amended (June 22, 1999).  Plaintiff argues that the absence of muscle atrophy—as it may be relevant in undermining a claimant's symptom allegations—depends on the claimant's alleged level of inactivity. (Doc. No. 22 at 4.)  Because Plaintiff did not allege such immobility that he would experience muscle atrophy, Plaintiff argues his pain testimony was not undermined by a lack of muscle atrophy. (Id.)  The Court does not read Meanel so narrowly.  Meanel stands for the proposition that a claimant's symptom testimony can be undermined when it is not consistent with the objective medical findings. Meanel, 172 F.3d at 1114.  Like in Meanel, here the ALJ found that Plaintiff's claims of being unable to work due to debilitating pain were inconsistent with the objective medical findings.

[plaintiff].”); <u>Molina</u>, 674 F.3d at 1104 (finding the ALJ properly discounted claimant's allegations regarding her mental functioning because the medical provider's report described claimant as alert, oriented, and not excessively anxious).

## 2. Inconsistent Statements in the Record

The ALJ's decision also noted significant inconsistencies in Plaintiff's statements concerning his alleged sobriety that further undermined Plaintiff's credibility. (Doc. No. 13-2 at 32.) For example, the ALJ noted that despite Plaintiff's alleged recent remission or sobriety, "the claimant's substance abuse or dependence (including primarily methamphetamine and alcohol with some heroin) has been present significantly and materially at various times throughout the period under adjudication." (<u>Id.</u>) The ALJ explained that Plaintiff's "allegation in treatment notes dated April 15, 2020 that he then had been sober 5.5 years is demonstrably inaccurate per" the record. (<u>Id.</u>) The ALJ then cited to medical records from 2018 and 2019 where Plaintiff presented to various providers requesting detox treatment, screening positive or self-reporting amphetamine use, and appearing intoxicated on methamphetamine at an appointment with his medical provider. (<u>See</u> Doc. No. 13-7 at 115, 338, 339, 404, 411.) Relatedly, the ALJ highlighted a March 2019 visit with Dr. Gregory Nicholson, M.D. where Plaintiff represented that he "used to drink" and "used crystal meth in the past," leading Dr. Nicholson to believe Plaintiff's alcohol and methamphetamine use disorders were in remission. (<u>Id.</u> at 120, 123.) However, the ALJ emphasized that Plaintiff "was intoxicated that the consultative examination with Dr. Glassman in January 2019 so he was obviously not in alleged remission for long." (Doc. No. 13-2 at 30.) These inconsistencies regarding Plaintiff's episodes of substance use, abstinence, and relapse provide another clear and convincing reason for discounting Plaintiff's subjective testimony and questioning his credibility. [8]

---

[8] Defendant provides several additional examples of inconsistencies in the record to further support the ALJ's assessment of Plaintiff's subjective symptom allegations. (Doc. No. 20 at 15–16.) However, the ALJ did not expressly articulate these as reasons for discounting Plaintiff's subjective symptom testimony. The Court limits its review to the

See Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (explaining that an ALJ may properly evaluate inconsistencies in testimony when determining a Plaintiff's reputation for truthfulness); Fair, 885 F.2d at 604, n.5 ("[I]f a claimant . . . is found to have been less than candid in other aspects of his testimony, that may be properly taken into account in determining whether or not his claim of disabling pain should be believed."); see also Rosalio O. v. Kijakaji, No. 2:22-CV-08679-GJS, 2023 WL 5180325, at *4 (C.D. Cal. Aug. 11, 2023) ("Plaintiff's 'lack of candor' regarding his drug and alcohol use supports the ALJ's negative conclusions about his symptom testimony."); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (relying on inconsistent statements about drug and alcohol use to reject claimant's testimony).

### 3. ALJ's Personal Observations

The ALJ also properly considered his own observations of Plaintiff when assessing his credibility. (Doc. No. 13-2 at 35.) An ALJ's personal observations may be used only in "the overall evaluation of the credibility of the individual's statements. An ALJ's personal observations cannot be the sole basis for discrediting a person's testimony." Orn, 495 F.3d at 639; see also Social Security Ruling 96–7p at 8 ("[T]he adjudicator is not free to accept or reject the individual's complaints solely on the basis of such personal observations, but should consider any personal observations in the overall evaluation of the credibility of the individual's statements.")

Here, the ALJ noted inconsistencies between Plaintiff's allegations and the abilities he demonstrated at the hearing. At the hearing, the ALJ observed that Plaintiff could comprehend questions asked and he responded with appropriate answers and followed the hearing adequately. (Doc. No. 13-2 at 35.) The ALJ noted that Plaintiff conducted himself

---

rationale provided by the ALJ. Accordingly, the Court does not consider the post-hoc rationalizations and inferences advanced by Defendant to justify the ALJ's rejection of Plaintiff's subjective symptom testimony. See Bray, 554 F.3d at 1225 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

appropriately during the hearing without any observed anxiety or panic attacks, disruptions, outburst, or other issues managing himself.  (Id.)  The ALJ's credibility finding was not solely based on his personal observations.  Rather, his personal observations form part of his overall assessment of Plaintiff's credibility and provide another reason for discounting Plaintiff's symptom testimony.

### 4. Conservative Treatment

Plaintiff argues that the ALJ erred in characterizing his treatment as minimal and conservative and finding his treatment was effective in controlling Plaintiff's symptoms. (Doc. No. 15 at 13–15.)  Defendant maintains that the ALJ reasonably found that Plaintiff's providers' recommendations of conservative treatment for his mental and physical conditions, including prescription medications, steroid injections, talk therapy, and physical therapy, were inconsistent with his complaints of disabling symptoms.  (Doc. No. 20 at 12–13.)

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  Smartt, 53 F.4th at 499 (citations omitted); Parra, 481 F.3d at 751 (construing over-the-counter pain medications as "conservative treatment"); see also Perez v. Colvin, No. 3:13-CV-01212-H-JLB, 2014 WL 1600322, at * 4 (S.D. Cal. Apr. 18, 2014).  Here, even if the ALJ erred by describing Plaintiff's treatment as conservative, the ALJ offered other sufficient and clear and convincing reasons for discounting Plaintiff's testimony, rendering any error in this respect harmless.  Carmickle, 533 F.3d at 1162; Fry v. Berryhill, 749 F. App'x 659, 661 (9th Cir. 2019); see also Villasenor v. Kijakazi, No. 1:21-CV-00548-SKO, 2022 WL 18027854, at *8, n. 9 (E.D. Cal. Dec. 30, 2022).

Accordingly, the ALJ properly discounted Plaintiff's subjective symptom allegations for at least three clear and convincing reasons that were sufficiently supported by substantial evidence.

### B. The ALJ's Residual Functional Capacity Determination

In his RFC assessment, the ALJ determined that Plaintiff could perform "light work"

as defined in 20 § C.F.R. 404.1567(b) and 416.967(b) with various additional physical and social limitations in place to account for his motor and mental impairments. (Doc. No. 13-2 at 26.) Plaintiff contends that the ALJ erred in formulating Plaintiff's residual functional capacity by placing undue reliance on the non-examining and non-treating opinions of Drs. Sabourin and Dupont[9] who examined Plaintiff in April and August 2019, respectively. (Doc. No. 15 at 17.) Plaintiff argues that the ALJ should have developed the record by obtaining an updated medical opinion because additional medical evidence, which developed in late 2019 through 2021—after Drs. Sabourin and Dupont conducted their evaluations—would have supported greater work limitations. (Id. at 18–19.) Defendant contends that the ALJ reasonably found Drs. Sabourin and Dupont's opinions persuasive and the ALJ committed no error by relying on their assessments in making the RFC determination even though these doctors did not review the complete medical record. (Doc. No. 20 at 16–17.)

For claims filed after March 27, 2017, as is the case here, an ALJ must consider all medical opinions and "evaluate their persuasiveness" based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." 20 C.F.R. § 416.920c(a)-(c). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability. Id. § 416.920c(a); see also Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the

---

[9]      The ALJ's also reviewed the psychiatric consultative opinions of Drs. Glassman and Nicholson. (Doc. No. 13-2 at 32.) Plaintiff does not challenge the ALJ's reliance on the opinions of Drs. Glassman or Nicholson in formulating Plaintiff's RFC. (Doc. No. 15 at 16–19.) Accordingly, any challenge Plaintiff may bring based on the ALJ's decision regarding their decisions has been waived. Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (discussing the general rule that claimants wave issues on appeal that were not brought before the district court).

evidence from other medical sources and nonmedical sources in the claim." <u>Id.</u> § 404.1520c(c)(2).  In other words, the ALJ must "articulate . . . how persuasive" he finds "all of the medical opinions" from each doctor or other source, <u>id.</u> § 404.1520c(b), and "explain how [he] considered the supportability and consistency factors" in reaching these findings, <u>id.</u> § 404.1520c(b)(2).  <u>See</u> <u>Woods</u>, 32 F.4th at 792.

Here, the ALJ found Drs. Dupont and Sabourin's opinions overall persuasive.  (Doc. No. 13-2 at 32.)  In April 2019, Dr. Sabourin examined Plaintiff as part of an orthopedic consultation and concluded that Plaintiff had "rather significant" left knee problems and moderate low back problems, but his other physical problems were relatively minimal. (Doc. No. 13-7 at 132.)  In the medical source statement, he concluded Plaintiff was capable of a reduced range of light exertion work, including that he could lift or carry twenty pounds occasionally and ten pounds frequently, stand and walk up to six hours of an eight-hour workday, and sit for six hours of an eight-hour workday.  (<u>Id.</u>)  The ALJ found Dr. Sabourin's evaluation that Plaintiff could preform light work persuasive, finding his opinion consistent with the longitudinal evidence of Plaintiff's orthopedic impairments and physical limitations.  (Doc. No. 13-2 at 32.)  However, the ALJ also included additional non-exertional physical limitations based on his evaluation of the full record, including treating physicians' examination findings and Plaintiff's subjective reports.  (<u>Id.</u>)  In August 2019, Dr. Dupont, as part of the Disability Determination Explanation at the reconsideration level of review, also concluded that Plaintiff could perform light work consistent with Dr. Sabourin's findings with some additional limitations.  (Doc. No. 13-3 at 49.)  The ALJ explained that he found Dr. Dupont's findings persuasive "because they are supported by and consistent with the objective medical evidence, the conservative outpatient treatment during the relevant period, and the documented periods of greater limitation incident to active substance abuse."  (Doc. No. 13-2 at 32.)

The ALJ did not error in considering and weighing the evidence provided by Drs. Dupont and Sabourin.  He properly articulated his finding of persuasiveness and considered the supportability and consistency factors as required under the SSA regulations.  The fact

that Drs. Dupont and Sabourin did not consider all the medical evidence in their determinations did not require the ALJ to discount their opinions. Elsey v. Saul, 782 F. App'x 636, 637 (9th Cir. 2019) (citing 20 C.F.R. § 404.1527(c)(3)) ("The regulations require that an ALJ evaluate the degree to which a non-examining source considers the evidence, not that a failure to consider all evidence requires the source to be discounted.") Nor did the ALJ error by failing to obtain another medical opinion regarding the evidence not reviewed by the state agency physicians. See Carol F. v. Saul, No. CV 19-7040-SP, 2021 WL 1200041, at *5 (C.D. Cal. Mar. 30, 2021). Plaintiff points to lumbar and cervical spine MRIs in 2019 and 2020 that showed moderate-to-severe disc degeneration and severe degenerative disc disease, neither of which Drs. Dupont nor Sabourin reviewed. (Doc. No. 15 at 18.) Plaintiff contends that the 2019 and 2020 MRIs are diagnostic findings that would have supported greater work limitations. (Id.) But SSA regulations make clear that imaging on its own is not "a substitute for findings on physical examination about [a claimant's] ability to function." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00 (c)(3)(c) (2023). And the ALJ reasonably found Drs. Dupont and Sabourin's earlier opinions were consistent with the later documented clinical evidence. This later clinical evidence showed that Plaintiff exhibited "no neurological deficits, a normal gait, and no required assistive devices to ambulate." (Doc. No. 13-2 at 27, 31.) Carol F., 2021 WL 1200041, at *5 ("The ALJ was not required to obtain another medical opinion regarding the evidence not reviewed by the state agency physicians when he found their opinions consistent with that later evidence.").

The fact that Drs. Dupont and Sabourin did not review the entire medical record does not mean that their opinions cannot serve as substantial evidence to support the ALJ's RFC determination. Owen v. Saul, 808 F. App'x 421, 423 (9th Cir. 2020) ("[T]here is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time.") Here, the ALJ did not impermissibly "play doctor," but rather independently reviewed the medical evidence and formed a reasonable conclusion regarding Plaintiff's RFC based on the medical record.

1    Accordingly, the ALJ committed no legal error in formulating Plaintiff's RFC.

2        **C.**    **Drug Addiction or Alcoholism Analysis**

3        When there is alcohol or drug use in the record, the ALJ must determine whether

4    drug addiction or alcoholism is a contributing factor material to the determination of

5    disability. 20 C.F.R. § 404.1535(a). The materiality finding turns on whether the claimant

6    would still be found disabled if the drug or alcohol use stopped. Id. § 404.1535(b)(1). If

7    the ALJ determines the claimant's disabling limitations would remain if the applicant

8    stopped using drugs or alcohol, then the substance abuse is not a material contributing

9    factor to the claimant's disability and they are entitled to benefits. Parra, 481 F.3d at 744–

10   45. Ultimately, the claimant "bears the burden of proving that his substance abuse is not a

11   material contributing factor to his disability." Id. at 748.

12       Here, the ALJ determined that Plaintiff would miss at least two workdays per month

13   because of his substance abuse. (Doc. No. 13-2 at 26.) However, in the DAA analysis, the

14   ALJ determined that in the absence of substance abuse, Plaintiff would have no more than

15   moderate mental limitations and would not need to miss two workdays per month. (Id. at

16   35–36.) The ALJ found that if Plaintiff stopped the substance use, he would have the

17   residual functional capacity to perform light work. (Id. at 36.) Therefore, the ALJ

18   concluded that the DAA was a material contributing factor to Plaintiff's disability, which

19   precluded the award of benefits. (Id. at 38.)

20       Plaintiff argues that the ALJ erred in finding that Plaintiff had the mental ability to

21   work in the absence of substance abuse. (Doc. No. 15 at 19.) Plaintiff contends that the

22   record demonstrates that Plaintiff had persistent mental health symptoms that did not abate

23   in periods of sobriety. (Id. at 20.) Plaintiff further challenges the ALJ's characterization

24   that Plaintiff conducted himself appropriately during the hearing without "disruptions,

25   outburst, or problems managing himself." (Id. at 21 (quoting 13-2 at 35).)

26       The Court is mindful of its deferential standard of review. As the Ninth Circuit has

27   instructed "[i]f the record considered as a whole can reasonably support either affirming or

28   reversing the Commissioner's decision, we must affirm." Hiler v. Astrue, 687 F.3d 1208,

1211 (9th Cir. 2012) (quoting <u>McCartey v. Massanari</u>, 298 F.3d 1072, 1075 (9th Cir. 2002). Substantial evidence supports the ALJ's DAA determination. The record includes the opinion of Dr. Dupont that "drug addiction and/or alcoholism is a contributing factor material to a finding of disability." (Doc. No 13-3 at 22.) The ALJ found Dr. Dupont's examination and conclusion persuasive. (<u>Id.</u> at 32.) Moreover, during periods of sobriety, Plaintiff generally presented with a normal mood and affect, appeared groomed, cooperative, friendly, alert, and oriented with normal speech, good eye contact, linear and coherent thought processes, good focus, and attention, and lacked hallucinations, suicidal intentions, or paranoia. (Doc. No. 13-7 at 119–125, 380, 383, 388; Doc. No. 13-8 at 6, 8, 76.) These clinical findings throughout the medical record support the ALJ's determination of only moderate mental limitations. Further, the ALJ accounted for Plaintiff's limitations in the RFC determination by restricting Plaintiff to simple, routine tasks in a nonpublic work environment with occasional interactions with coworkers and supervisors. (Doc. No. 13-2 at 33.) Accordingly, the Court affirms the ALJ's decision with respect to the DAA finding.

## **CONCLUSION**

For the foregoing reasons, the ALJ did not commit reversible error in discounting Plaintiff's subjective complaints, formulating his RFC, or conducting the DAA analysis. Therefore, the ALJ's disability determination must be upheld. Accordingly, the Court grants Defendant's cross-motion for summary judgment and denies Plaintiff's motion for summary judgment.

**IT IS SO ORDERED.**

DATED: February 6, 2024

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT